

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-09-239-CV

VICTOR J. BURGESS, D/B/A
EYDIE'S BAIL BONDS, AND
THE LOCAL AGENT FOR SENECA
INSURANCE CO., INC.

APPELLANT

V.

THE STATE OF TEXAS

APPELLEE

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

## OPINION

------------

Appellant Victor J. Burgess, d/b/a Eydie's Bail Bonds, and the Local Agent for Seneca Insurance Co., Inc. (Burgess) appeals the trial court's bond forfeiture judgment. In three issues, Burgess contends that the trial court unlawfully assessed a court cost for service of citation by certified mail as part of the judgment. We affirm.

Background Facts

John G. Smith, who was charged with possessing a controlled substance, failed to appear at a court hearing. Therefore, the trial court signed a judgment nisi that forfeited his $5,000 bond, which Burgess had signed as surety.[1] In June 2007, the Denton County District Clerk sent notice of the judgment nisi to Smith by citation through first class mail at the address that he had provided on the bond and sent notice of the judgment nisi to Burgess by citation through certified mail.[2]

Burgess filed an answer to the forfeiture action, and then the State filed a motion for summary judgment that included the State's contention that Burgess was required to pay court costs for the service of citation upon him. The State asserted in part that the trial court did not have the "authority to decide what costs are assessed and whether such costs are reasonable" because such a decision "would require the proper parties to be before a court

---

[1] A judgment nisi alone "does not authorize recovery of a bond amount by the State. A judgment nisi is a provisional judgment that is not final or absolute, but may become final. Nisi means 'unless,' so a judgment nisi is valid unless a party shows cause why it should be withdrawn." *Safety Nat'l Cas. Corp. v. State*, 273 S.W.3d 157, 163 (Tex. Crim. App. 2008) (citation omitted).

[2] *See* Tex. Code Crim. Proc. Ann. arts. 22.03–.05 (Vernon 2009); Tex. R. Civ. P. 106(a)(2).

2

having proper jurisdiction in an action regarding the appropriateness of civil court costs, (some of) which are set by the Commissioners Court."[3]

Burgess's response to the State's summary judgment motion did not contest Burgess's general liability on the forfeiture of Smith's bond; instead, the response raised only the issue of whether the State was entitled to recover the cost that was charged by the district clerk for service of citation by certified mail. After the State filed a reply to Burgess's response, the trial court signed a final judgment in favor of the State that awarded, among other relief, all of the court costs that the district clerk had assessed. According to a document titled "CIVIL BILL OF COST," the court costs amounted to $251 and specifically included a $68 cost for citation by certified mail.[4]

---

[3] ... The State also contended, "It is the County and the District Clerk who assesses and collects civil court costs—not the State. Any court action regarding the reasonableness of court costs should include those parties."

[4] ... The trial court's June 18, 2009 final judgment does not expressly refer to the parties' summary judgment documents but implies that the court granted the State's summary judgment motion. *See Kendziorski v. Saunders*, 191 S.W.3d 395, 402 (Tex. App.—Austin 2006, no pet.) ("[T]he court's final judgment indicated that Saunders's motion for summary judgment had been granted."). The trial court sent the parties' counsel an e-mail on July 21, 2009 that said that the court was rescinding the final judgment so that it could be replaced with an "Order Granting Summary Judgment." The next day, the trial court wrote by hand on another document contained in the clerk's record that it was rescinding the final judgment. The record does not contain an order granting summary judgment or a substitute final judgment, and the trial court's attempts to rescind its judgment occurred after its plenary power to do so had expired. *See* Tex. R. Civ. P. 329b(d); *Wright v. Pino*, 163 S.W.3d 259, 263

Burgess asked the trial court to enter findings of fact and conclusions of law, but the court never did so. Burgess filed a notice of appeal, stating that he is appealing as "Victor J. Burgess, d/b/a Eydie's Bail Bonds, and the Local Agent for Seneca Insurance Co., Inc."

## Standing

Before the submission of this appeal, the State filed a motion to dismiss the appeal for lack of jurisdiction. Based on the contents of the motion to dismiss and on the State's oral argument, we broadly construe the motion as challenging Burgess's standing to bring the appeal because he (1) is allegedly not the surety on the bond and is therefore not liable to pay the trial court's judgment and (2) does not have authority to bring an appeal as an agent of Seneca Insurance Co., Inc., which is allegedly the real surety on the bond.

The issue of a party's standing may be raised for the first time on appeal. *City of Arlington v. Centerfolds, Inc.*, 232 S.W.3d 238, 244 (Tex. App.—Fort Worth 2007, pet. denied). In order to maintain a suit, a plaintiff must have a justiciable interest in the subject matter of the litigation. *Id.* A party's standing to maintain a suit, which is a component of subject matter jurisdiction, may be satisfied when the party has a personal stake in the outcome of the suit and the

(Tex. App.—Fort Worth 2005, no pet.).

4

party has suffered a concrete and particularized injury. *Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001) (citing *Raines v. Byrd*, 521 U.S. 811, 819, 117 S. Ct. 2312, 2317 (1997)); *see City of Fort Worth v. D.T.*, 165 S.W.3d 425, 427 (Tex. App.—Fort Worth 2005, no pet.) (explaining that to establish standing, "one must show a justiciable interest by alleging actual or imminent threat of injury peculiar to one's circumstances and not suffered by the public generally").

An affidavit that Burgess filed on appeal explains,

> [W]hen I commenced my business relationship with Seneca, I entered into a written, contractual indemnity agreement with Seneca. Specifically, under that indemnity agreement . . .[,] wherein I am expressly identified as "Agent/Indemnitor," when there is a bail bond forfeiture arising from a bond that I have executed as "agent" of Seneca, I am required to indemnify Seneca for any financial loss to [Seneca] arising out of such forfeiture. Under this agreement, my failure to pay Seneca the amount of any financial loss to [Seneca], arising out of a bail bond forfeiture for which I am responsible while doing business as Eydie's Bail Bonds, would result not only in my losing the support of Seneca as my collateral security, but would also result in the loss of my license to write bail bonds in Denton County, Texas.[5]

---

[5] ... We may consider documents submitted by the parties that are outside of the trial court's record for the purpose of determining our own civil jurisdiction. *See* Tex. Gov't Code Ann. § 22.220(c) (Vernon Supp. 2009); *Sabine Offshore Serv., Inc. v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex. 1979); *Kaufman v. Islamic Soc'y of Arlington*, 291 S.W.3d 130, 139 n.20 (Tex. App.—Fort Worth 2009, pet. denied). We will not consider the evidence that has been submitted by Burgess on appeal for any purpose other than determining our jurisdiction and resolving the State's motion to dismiss.

5

Additionally, the particular wording of the judgment that the trial court signed in this case designates "VICTOR J. BURGESS, AGENT D/B/A EYDIE'S BAIL BONDS" as being responsible to pay the judgment. We conclude that these documents, which establish (1) Burgess's general liability to pay bond forfeiture judgments against Seneca Insurance Co., Inc. when he has executed bonds as Seneca Insurance Co., Inc.'s agent and (2) his specific liability to pay the judgment in this case, comprise evidence that Burgess has a particularized, personal stake in the outcome of this appeal and therefore has standing on that basis. *See Brown*, 53 S.W.3d at 305; *see also Torrington Co. v. Stutzman*, 46 S.W.3d 829, 844 (Tex. 2000) ("Torrington has a clear justiciable interest in appealing the judgment against Textron, which it would have to pay.").

As to the State's argument that Burgess does not have authority to pursue an appeal on behalf of Seneca Insurance Co., Inc., the record contains a document titled "POWER OF ATTORNEY" that relates specifically to the execution of Smith's bond, names Burgess as an "Executing Agent," and states,

> Seneca Insurance Company, Inc. . . . has constituted and appointed . . . the named Executing Agent its true and lawful Attorney-In-Fact, with full power and authority to sign the company's name and affix its corporate seal to . . . any and all obligations as herein provided, and the execution of such obligations in pursuance of these presents shall be as binding upon the company as fully and to all intents and purposes as if done by the regularly elected

6

officers of said company . . . ; and the said company hereby ratifies and confirms all and whatsoever its said attorney-in-fact may lawfully do and perform in the premises by virtue of these presents.

Another document, titled "QUALIFYING POWER OF ATTORNEY," contains similar language generally related to Burgess's relationship with Seneca Insurance Co., Inc.[6]

The State argues, "Nowhere in these documents does [Seneca Insurance Co., Inc.] give to [Burgess] the authority to defend or appeal a bond forfeiture action." However, Burgess's affidavit that he filed in this court states that he is "authorized, in [his] *capacity as agent for Seneca*, to retain local counsel to litigate and, if necessary, *to prosecute appeals for Seneca* arising out of forfeiture actions concerning bail bonds executed by [him] d/b/a Eydie's Bail Bonds." [Emphasis added.] Burgess also presented this court with a letter from Seneca Insurance Co., Inc.'s chief operating officer to him that states, "Consider this letter as verification that you are authorized to employ the attorney of your choice to represent you *as a Bail Agent for Seneca Insurance Company, Inc.* in regards [sic] to outstanding forfeitures . . . ." We conclude that the evidence submitted by Burgess defeats the State's argument that

---

[6] ... For instance, the qualifying power of attorney says that Burgess may affix the seal of Seneca Insurance Co., Inc. on "all documents necessary or incidental to the execution of bail bonds."

7

Burgess does not have the authority to appeal as the agent for Seneca Insurance Co., Inc.

For these reasons, we conclude that Burgess has standing to maintain this appeal, and we deny the State's motion to dismiss.

## Summary Judgment Standard of Review

We review a summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Id.* We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986).

## The Authorization of the Cost For Service of Citation by Certified Mail

In his first issue, Burgess argues that the $68 cost assessed by the district clerk is unlawful because the Denton County Commissioners Court has not authorized that cost. The government code provides that a district clerk "shall collect" a fee for "serving process by certified or registered mail."

Tex. Gov't Code Ann. § 51.319(2) (Vernon 2005).  The code explains that the fee to be collected by the district clerk for serving process by certified mail is "*the same fee that sheriffs and constables are authorized to charge for the service under Section 118.131, Local Government Code.*"  *Id.* (emphasis added).

Section 118.131 states in part,

(a) The commissioners court of a county may set reasonable fees to be charged for services by the offices of the sheriff and constables.

(b) The commissioners court may not set fees higher than is necessary to pay the expenses of providing the services.

. . . .

(d) The commissioners court must set the fees before October 1 of each year to be effective January 1 of the following year.

Tex. Loc. Gov't Code Ann. § 118.131 (Vernon 2008); *see Camacho v. Samaniego*, 831 S.W.2d 804, 812 (Tex. 1992).

Burgess attached evidence to his summary judgment response that establishes that the Denton County Commissioners Court has set a $60 sheriff/constable fee for "Citation" and has set a fee in the same amount for "Citation by Publication," "Citation by Posting," "Citation by Scire Facias," and

9

"Citation—Forcible Detainer."[7] Burgess essentially contends that because the commissioners court has not specifically set a fee for "Citation by Certified Mail" as it did for other types of citation, the district clerk is not authorized to charge such a fee under the statutes above.

However, the rules of civil procedure specifically describe certified mailing as one of the two main methods of service of "citation," and the commissioners court authorized a $60 fee for service of "citation." *See* Tex. R. Civ. P. 106(a)(2); *Taylor v. State*, 293 S.W.3d 913, 915–16 & n.1 (Tex. App.—Austin 2009, no pet.). Although Burgess contended during oral argument that the word "citation" in the commissioners court's schedule of sheriff/constable fees refers only to service by personal delivery rather than by certified mail, nothing in the schedule of fees or in the remainder of the record indicates that the commissioners court intended to limit the meaning of the word "citation" in that way, and the rules of civil procedure and Texas courts signal that Texas sheriffs and constables may serve citation by certified mail, not only by personal

---

[7] Although Burgess's exhibit shows that the commissioners court set these fees in September 2007, which was after citation was served upon Burgess, Burgess has not argued at trial or on appeal that the fees in effect when he was served with citation were different than the fees authorized by the commissioners court in September 2007. We may not reverse the trial court's judgment on unassigned error. *Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998).

delivery. *See* Tex. R. Civ. P. 107 (stating that an "officer or authorized person" may serve citation by certified mail); *P & H Transp., Inc. v. Robinson*, 930 S.W.2d 857, 859 (Tex. App.—Houston [1st Dist.] 1996, writ denied); *see also Fellows v. Adams*, No. 01-06-00924-CV, 2007 WL 3038090, at *2 (Tex. App.—Houston [1st Dist.] Oct. 18, 2007, no pet.) (mem. op.) (holding that service of process through certified mail by a deputy constable was sufficient to support a default judgment). Therefore, we hold that the commissioners court's authorization of a $60 fee for service of an unspecified manner of "citation" authorizes the charging of that fee when the citation is served by certified mail, and we overrule Burgess's first issue to that extent.

As another part of his first issue, Burgess notes that while the commissioners court approved a $60 fee for "citation," the district clerk charged $68 in this case for "CITATION BY CERTIFIED MAIL." In its motion for summary judgment, the State generally asserted that Burgess was liable for all applicable civil court costs and then specifically relied on the commissioners court's order under section 118.131 to establish the district clerk's ability to collect $60, not $68; thus, Burgess's statement in his summary judgment response that the State relied on section 118.131 to authorize the district clerk to recover a $68 cost is incorrect. Furthermore, section 51.317(b)(3) of the government code instructs a district clerk to collect an $8 fee for the district

11

clerk's "issuing" (as opposed to "serving") a citation,[8] and this justifies the collection of the additional $8 fee. *See* Tex. Gov't Code Ann. § 51.317(b)(3) (Vernon Supp. 2009). The district clerk "issued" two citations in this case (one for Burgess and one for Smith), and along with the $68 "CITATION BY CERTIFIED MAIL" fee in the clerk's bill of costs, the bill also contains a separate $8 "CITATION" fee. Although we agree with Burgess's statement during oral argument that nothing in the record directly shows that section 51.317(b)(3) is the specific reason that either of the two $8 fees were charged, Burgess does not dispute that these fees are authorized to be charged under that statute. Thus, we hold that the trial court's inclusion of the two $8 fees did not cause the rendition of an improper overall calculation of $251 for costs of suit in the trial court's judgment. *See* Tex. R. App. P. 44.1(a)(1); *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 928 (Tex. App.—Fort Worth 2009, pet. denied). Therefore, we also overrule the remaining portion of Burgess's first issue.

---

[8] ... Issuance and service of citation are separate acts. The clerk of the court is responsible to issue a citation; the party requesting the citation is responsible to ensure that the citation is properly served. Tex. R. Civ. P. 99(a).

The Reasonableness of the Cost for Service of Citation by Certified Mail

In his second and third issues, Burgess contends that even if the Denton County Commissioners Court authorized the cost for service of citation by certified mail, the cost is nonetheless unlawful under section 118.131 of the local government code because it is not reasonable and is higher than necessary to pay the expense of the service. *See* Tex. Loc. Gov't Code Ann. § 118.131(a)–(b). Burgess relies on other statutes relating to serving documents by certified mail and on the postage expense of certified mail in 2007.[9] *See* Tex. Civ. Prac. & Rem. Code Ann. § 12.005(b)(2) (Vernon 2002) (establishing the fee for notice of an action involving presentation or use of fraudulent documents at "the cost of postage if the service is by registered or certified mail"); Tex. Code Crim. Proc. Ann. art. 102.006(a)(2)–(3) (Vernon Supp. 2009) (establishing the fee for serving notices by certified mail in expunction proceedings at the cost of postage plus $1 or $2). The State asserts, among other contentions, that this bond forfeiture action is not the

---

[9]... We note that the record does not contain any evidence of how or why the commissioners court arrived at the $60 figure for service of "citation," nor does it contain evidence regarding the specific administrative procedures and duties of Denton County employees when they serve citation by certified or registered mail.

proper suit to attack the validity of a fee that was authorized by the commissioners court.

For us to agree with Burgess's contentions in his second and third issues and hold that the trial court erred by entering judgment in favor of the State that includes the cost for service of citation by certified mail, we would be required to invalidate the Denton County Commissioners Court's schedule of sheriff/constable fees, at least as it applies to that method of service. *See Harris County v. Proler*, 29 S.W.3d 646, 649 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (noting that the setting of fees under section 118.131 is the sole responsibility of the commissioners court). We would have to do so in a case that was not filed for the purpose of attacking the commissioners court's order (as the case was filed by the State for the forfeiture of Smith's bond) and in which none of Denton County, the commissioners court, any of the commissioners court's members, nor the district clerk (who collects the fee at issue) have been made parties to the suit.

District courts have appellate jurisdiction and general supervisory jurisdiction over the orders of commissioners courts. *See* Tex. Const. art. V, § 8; *Wichita County v. Bonnin*, 268 S.W.3d 811, 815 (Tex. App.—Fort Worth 2008, pet. denied) (op. on reh'g); *Hooten v. Enriquez*, 863 S.W.2d 522, 528 (Tex. App.—El Paso 1993, no writ). The legislature has not established the

14

general manner by which such supervisory jurisdiction may be used. *Wichita County*, 268 S.W.3d at 815. However, courts, including our own court, have consistently held that unless a commissioners court's order is wholly void, it may not be challenged through a collateral attack.[10]

In *Luck v. Welch*, the appellant contended that a Tarrant County Commissioners Court's order in 1931 that established a public access road across the appellant's land was invalid because certain statutory procedures had not been followed. 243 S.W.2d 589, 591 (Tex. Civ. App.—Fort Worth 1951, writ ref'd n.r.e). We overruled the appellant's argument, explaining in part,

> All of the cases cited by appellant in support of the foregoing points were those in which direct attacks were made on the judgment of the Commissioners' Court. . . . 'The power of the District Court to supervise the proceedings of the Commissioners' Court here involved gave the injunction suit *the character of a direct attack upon those proceedings rather than a collateral one.* * * * Th[is] permitted a full inquiry for the purpose of seeing whether throughout the proceedings the Court had complied with the law, unhindered by any presumptions ordinarily indulged in a collateral attack upon a judgment of a court of general jurisdiction.' *The appellant is here making a collateral attack upon the 1931*

---

[10] A collateral attack is an "attempt to avoid the effect of a judgment in a proceeding brought for some other purpose. A direct attack on a judgment, conversely, is an attempt to change that judgment in a proceeding brought for that specific purpose, such as an appeal or a bill of review." *Kortebein v. Am. Mut. Life Ins. Co.*, 49 S.W.3d 79, 88 (Tex. App.—Austin 2001, pet. denied) (citation omitted), *cert. denied*, 534 U.S. 1128 (2002).

15

*judgment [of the commissioners court] twenty years after its rendition and this may not be done.*

*Id.* (emphasis added) (citations omitted) (quoting *Haverbekken v. Hale*, 109 Tex. 106, 114, 204 S.W. 1162, 1165 (1918)).

Five years later, in reviewing a challenge made by a private citizen against the Nueces County Commissioners Court to an order of the commissioners court that authorized payment of $600 to an assistant district attorney, the Texas Supreme Court stated,

> An order of the Commissioners Court acting judicially on a matter within its discretion is the judgment of a court of record which is not subject to collateral attack and which may be reviewed only on appeal or in a direct action for that purpose. And a suit to enjoin the enforcement of the judgment of a court other than the one in which the action is brought is generally regarded as a collateral attack on the judgment. . . .
>
> . . . .
>
> It is well settled that a direct equitable proceeding in district court, the purpose and effect of which is to review or set aside an order of the Commissioners Court, comes within the power granted by the constitutional and statutory provisions above referred to, and has the effect of a direct attack upon the order, at least where the Legislature has not prescribed the procedure for appealing from such order. The present suit invokes the equity powers of the district court to prevent by injunction the payment of county funds for a purpose alleged to be illegal. It is our opinion that the same should be treated as a direct, rather than a collateral, attack upon the order of the Commissioners Court authorizing such payment to be made.

*Scott v. Graham*, 156 Tex. 97, 102–03, 292 S.W.2d 324, 327–28 (1956) (citations omitted). A year later, the supreme court reiterated that an order adopted by a commissioners court is generally considered immune from collateral attack unless it is "wholly void" and an "absolute nullity" and that "every departure from a prescribed method does not render such [an order] void so as to subject [it] to collateral attack." *Henn v. City of Amarillo*, 157 Tex. 129, 133–35, 301 S.W.2d 71, 74–75 (1957);[11] *see also Mobil Oil Corp. v. Matagorda County Drainage Dist. No. 3*, 597 S.W.2d 910, 911–12 (Tex. 1980) (approving a challenge to an annexation order because suit was filed against the

---

[11] Before the *Henn* decision, the supreme court indicated that acts of a commissioners court could be challenged through a collateral attack if they comprised a "gross abuse of discretion." *Harrison v. Jay*, 153 Tex. 460, 464, 271 S.W.2d 388, 390 (1954) (quoting *Yoakum County v. Gaines County*, 139 Tex. 442, 448, 163 S.W.2d 393, 396 (1942)). But the *Henn* opinion used the void/voidable distinction to establish whether a commissioners court's order is subject to collateral attack. *Henn*, 157 Tex. at 131,133–36, 301 S.W.2d at 72–76. The supreme court has more recently implied that a commissioners court's order that is arbitrary, capricious, or unsupported by substantial evidence is voidable and that whether the commissioners court abused its discretion is the relevant standard in a direct attack on the commissioners court's order. *See Ector County v. Stringer*, 843 S.W.2d 477, 479 n.2 (Tex. 1992); *Pritchard & Abbott v. McKenna*, 162 Tex. 617, 627, 350 S.W.2d 333, 339–40 (1961); *see also In re Masonite Corp.*, 997 S.W.2d 194, 198 (Tex. 1999) (orig. proceeding) ("That the trial court's venue transfer orders were a clear abuse of discretion does not mean that they were 'void.'"). We have not found any case decided after *Henn* in which the supreme court repeated its pre-*Henn* language that an abuse of discretion makes a commissioners court's order reviewable through a collateral attack.

Matagorda County Commissioners Court as a direct challenge to the commissioners court's exceeding its authority); *In re El Paso County Comm'rs Court*, 281 S.W.3d 16, 24 (Tex. App.—El Paso 2005, orig. proceeding) (stating that it has "long been the law in Texas that a direct equitable action must be filed in the district court in order to invoke that court's jurisdiction to exercise supervisory control of the commissioners court"); *Tarrant County v. Denton County*, 87 S.W.3d 159, 174 (Tex. App.—Fort Worth 2002, pet. denied) (explaining that commissioners courts' orders may be collaterally attacked only when they are void), *overruled on other grounds by Martin v. Amerman*, 133 S.W.3d 262, 268 (Tex. 2004); *City of Katy v. Waterbury*, 581 S.W.2d 757, 760 (Tex. Civ. App.—Houston [14th Dist.] 1979, no writ); *Atl. Richfield Co. v. Liberty-Danville Fresh Water Supply Dist. No. One of Gregg County*, 506 S.W.2d 931, 934 (Tex. Civ. App.—1974, writ ref'd n.r.e.) ("[T]he District Court is authorized to exercise supervisory control over the Commissioners' Court through its equitable powers in a plenary suit brought for the purpose of reviewing or setting aside an order of such court.").

Courts have noted that a commissioners court's order may be void when it is unconstitutional, the commissioners court does not have jurisdiction over the subject matter of the order, or a condition precedent to the order has not occurred. *See Chenault v. Bexar County*, 782 S.W.2d 206, 209 (Tex. 1989);

18

*La.-Pac. Corp. v. Newton County*, 149 S.W.3d 262, 265 (Tex. App.—Eastland 2004, no pet.); *Crider v. Cox*, 960 S.W.2d 703, 706 (Tex. App.—Tyler 1997, writ denied). Burgess's claim in his second and third issues rests on his contention that the Denton County Commissioners Court misapplied the authority granted to it by section 118.131; Burgess does not assert that the commissioners court did not have jurisdiction to set sheriff/constable fees, that there was an unperformed condition precedent, or that the commissioners court's setting the "citation" service fee at $60 is unconstitutional.

Thus, under the authority above, we hold that Burgess's challenge to the commissioners court's order is not an assertion that the order is void, and, as the State asserts, the challenge may not be made in this collateral bond forfeiture proceeding but must instead be raised in a separate action. *See Bowles v. Clipp*, 920 S.W.2d 752, 754–55 (Tex. App.—Dallas 1996, writ denied) (concerning claims in which individuals who had paid improper criminal bond fees in Dallas County sued Dallas County and the sheriff). Therefore, we overrule Burgess's second and third issues.

## Conclusion

Having overruled all of Burgess's issues, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED:  May 13, 2010