

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00279-CV

---

| | |
|---|---|
| VICTOR J. BURGESS, INDIVIDUALLY AND D/B/A EYDIE'S BAIL BONDS, AND EDITH BURGESS, INDIVIDUALLY AND D/B/A BURGESS BAIL BONDS | APPELLANTS AND APPELLEES |

V.

| | |
|---|---|
| DENTON COUNTY, TEXAS; THE DENTON COUNTY BAIL BOND BOARD; SHERRI ADELSTEIN, IN HER OFFICIAL CAPACITY AS DENTON COUNTY DISTRICT CLERK, AND AS PRESIDING CHAIRPERSON OF THE DENTON COUNTY BAIL BOND BOARD; CYNTHIA MITCHELL, IN HER OFFICIAL CAPACITY AS DENTON COUNTY CLERK; BEN PARKEY, IN HIS OFFICIAL CAPACITY AS SHERIFF OF DENTON COUNTY; AND JIM DOTSON, MICHAEL TRUITT, JERRY RAYBURN, JOHN HATZENBUHLER, KEN JANNERETH, AND RON SMITH, IN THEIR OFFICIAL CAPACITIES AS CONSTABLES FOR DENTON COUNTY | APPELLEES AND APPELLANTS |

----------

----------

## OPINION

----------

Appellants Victor J. Burgess, individually and d/b/a Eydie's Bail Bonds, and Edith Burgess, individually and d/b/a Burgess Bail Bonds (the Burgesses), filed this interlocutory appeal from the trial court's denial of their motion for a temporary injunction during the pendency of their declaratory judgment action. Appellees Denton County, Texas; the Denton County Bail Bond Board; Sherri Adelstein, in her official capacity as Denton County District Clerk and as presiding chairperson of the Denton County Bail Bond Board; and Cynthia Mitchell, in her official capacity as Denton County Clerk (collectively Denton County); Ben Parkey, in his official capacity as Sheriff of Denton County; and Jim Dotson, Michael Truitt, Jerry Rayburn, John Hatzenbuhler, Ken Jannereth, and Ron Smith, in their official capacities as constables for Denton County (law enforcement defendants) (all collectively Appellees) filed a cross-appeal from the trial court's denial of their pleas to the jurisdiction. We affirm in part and reverse in part. Because we hold that the trial court did not err by denying Appellees' pleas to the jurisdiction, we affirm those orders of the trial court. Because we hold that the trial court abused its discretion by denying the Burgesses' temporary injunction, we reverse the trial court's denial of the temporary

injunction and remand this cause to the trial court for the court to grant the Burgesses' motion for temporary injunction in accordance with this opinion.

## I. Background

This appeal arises out of the Burgesses' challenge to a fee assessed by the district clerk and county clerk of Denton County for service of citation by certified mail. Victor had previously challenged the same fee after he posted the bond for a defendant in a criminal case.[1] The defendant did not appear at a court hearing, and the trial court consequently signed a judgment nisi forfeiting the bond.[2] After receiving notice, Victor filed an answer.[3] The State filed a motion for summary judgment in which it asserted that Victor was required to pay court costs for the service of citation upon him.[4] Victor argued in response that the State was not entitled to recover that cost.[5] The trial court signed a judgment in favor of the State that included an award for costs assessed by the district clerk.[6] The bill of costs included $68 for citation by certified mail.[7]

---

[1]*See Burgess v. State*, 313 S.W.3d 844, 847 (Tex. App.—Fort Worth 2010, no pet.) (*Burgess I*).

[2]*Id.*

[3]*Id.*

[4]*Id.*

[5]*Id.*

[6]*Id.*

[7]*Id.*

Victor appealed and argued that the assessment of the $68 cost was unlawful because the Denton County Commissioners Court had not authorized the cost.[8] This court held that, based on the record before us, the commissioners court had authorized charging a $60 fee for service of citation by certified mail and that the government code authorized the district clerk to charge an $8 fee for issuing a citation.[9]

Victor also argued that the $60 cost was unlawful because it was not reasonable and was higher than necessary to pay the expense of the service.[10] Noting that Victor's suit "was not filed for the purpose of attacking the commissioners court's order" and was one in which "none of Denton County, the commissioners court, any of the commissioners court's members, nor the district clerk (who collects the fee at issue) ha[d] been made parties," this court overruled this issue on the ground that Victor's challenge to the commissioners court order authorizing the $60 was an impermissible collateral attack.[11]

After this court handed down its opinion, the Burgesses brought this suit challenging the $60 fee. The Burgesses sued Denton County and the law enforcement defendants. The Burgesses sought a temporary restraining order,

---

[8]*Id.* at 850.

[9]*Id.* at 851.

[10]*Id.*

[11]*Id.* at 852, 854.

4

temporary injunction, and permanent injunction prohibiting Appellees from assessing, imposing, or collecting from them the certified mail fee. The Burgesses also sought a declaratory judgment that the sixty-dollar certified mail fee as ordered by the Denton County Commissioners Court is invalid and in violation of Texas law.

At the hearing on the Burgesses' request for a temporary injunction, the district clerk for Denton County testified that to prepare a citation for service by mail, her office uses a web-based service to create the citation, which takes two to four minutes depending on the clerk. The clerk prints out the document, prepares an envelope and return receipt, and takes it to the county's mail department, which puts postage on the envelope. She stated that she believed that the fee charged by the service per document was around eighty cents and that the United States Postal Service charges $2.80 for certified mail, plus $1.10 for return receipt requested. The clerk's office charges an $8.00 fee for issuing the citation, and this fee is not part of the $60 that it charges for service of the citation. She testified that she collects a $60 fee for service by certified mail not because of the costs to her office but because of her belief that the commissioners court had set that amount as the fee for sheriffs and constables in providing the same service.

Jim Dotson, a Denton County constable, testified that if someone in his office has ever provided service of citation by certified mail, "it's very seldom," and that he had never done it, although he was "sure some of the employees

5

have." Dotson also serves on the committee that makes recommendations to the commissioners court regarding the fees that the court sets for services provided by sheriffs and constables. When asked if the committee made a determination of what the necessary expense would be for sheriffs or constables to serve process by certified mail, he stated that he "[didn't] remember that being part of it."

After the hearing, the trial court sent a letter to the parties stating that "[i]t is common knowledge" that employee wages; the cost of equipment and software; and transportation, filing, and storage costs associated with preparation of service of citation by certified mail "are all factors to be considered in determining the actual cost of goods and services" and that "[t]here was no showing that the capital costs, personnel costs, or other overhead costs of Denton County were minimal." The trial court entered an order denying the Burgesses' application for a temporary injunction "on the basis that [the Burgesses] cannot show that [Appellees] acted illegally, unreasonably, or arbitrarily in setting or assessing" the fee. The Burgesses appeal from that order.

Regarding the still-pending declaratory judgment claim, Appellees filed pleas to the jurisdiction asserting that the trial court did not have jurisdiction because, due to "bond forfeiture lawsuits now pending in Denton County," another court had exclusive jurisdiction over the suit. They also asserted legislative immunity. The trial court denied the pleas, and Appellees brought this cross-appeal.

6

## II. The Burgesses' Appeal

In the Burgesses' sole issue, they argue that the trial court erred and abused its discretion by denying their application for a temporary injunction. They ask this court to reverse the trial court's order denying the application and to remand this case for the trial court to enter a temporary injunction enjoining Appellees from assessing or imposing against or collecting from them the challenged certified mail fee until final disposition of the case.

**Standard of Review**

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending a trial on the merits.[12] To be entitled to a temporary injunction, the applicant must plead a cause of action and further show both a probable right to recover on that cause of action and a probable, imminent, and irreparable injury in the interim.[13] A probable right of recovery is shown by alleging a cause of action and presenting evidence tending to sustain it.[14] An injury is irreparable if damages would not adequately compensate the injured party or if they cannot be measured by any certain pecuniary standard.[15]

---

[12]*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)).

[13]*Id.*; *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 220 (Tex. App.—Fort Worth 2009, pet. denied), *cert. denied*, 130 S. Ct. 2061 (2010).

[14]*Frequent Flyer Depot*, 281 S.W.3d at 220.

[15]*Butnaru*, 84 S.W.3d at 204; *Frequent Flyer Depot*, 281 S.W.3d at 220.

In an appeal from an order granting or denying a temporary injunction, the scope of review is restricted to the validity of the order granting or denying relief.[16]  Whether to grant or deny a request for a temporary injunction is within the trial court's discretion, and we will not reverse its decision absent an abuse of discretion.[17]  A trial court does not abuse its discretion if it bases its decision on conflicting evidence and at least some evidence in the record reasonably supports the trial court's decision.[18]  When the trial court does not file findings of fact or conclusions of law, we must uphold the court's order on any legal theory supported by the record.[19]

**Analysis**

As the Burgesses point out, the trial court based its denial of their application for a temporary injunction on the "probable right to recover" element, specifically "on the basis that [the Burgesses could not] show that [Appellees] acted illegally, unreasonably, or arbitrarily in setting or assessing the service of citation by certified mail fee."  The Burgesses contend that the commissioners court of Denton County did not authorize a fee of $60 for service of process by

---

[16]*Walling*, 863 S.W.2d at 58; *Frequent Flyer Depot*, 281 S.W.3d at 220.

[17]*Butnaru*, 84 S.W.3d at 204; *Frequent Flyer Depot*, 281 S.W.3d at 220.

[18]*Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *Frequent Flyer Depot*, 281 S.W.3d at 220.

[19]*Davis*, 571 S.W.2d at 862.

certified mail, or, alternatively, if it did, it acted unreasonably and arbitrarily when it did so.

The legislature has provided in government code section 51.319 that district clerks must collect fees for certain services.[20] The district clerk has no discretion to not collect the fees discussed in that section.[21] Section 51.319 discusses two specified categories of services and has one general catchall provision. In subsection (1), which is not at issue in this case, the legislature set the fees for providing services relating to the matter of the estate of a deceased person or a minor.[22] Subsection (2), applicable to this case, relates to service of process by mail. The legislature has delegated to a county commissioners court the ability to set the fee that sheriffs or constables are authorized to charge for providing service of citation by certified or registered mail,[23] and under subsection (2), the legislature has directed the district clerk to collect the same fee when the clerk provides that service.[24] Specifically, the statute says that "[t]he district clerk shall collect . . . for serving process by certified or registered

---

[20]Tex. Gov't Code Ann. § 51.319 (West 2005).

[21]*Id.* (stating that the district clerk "*shall* collect the following fees") (emphasis added).

[22]*Id.* § 51.319(1).

[23]Tex. Loc. Gov't Code Ann. § 118.131(a), (b) (West 2008).

[24]Tex. Gov't Code Ann. § 51.319(2).

mail, the same fee that sheriffs and constables are authorized to charge for the service under [local government code section 118.131]."[25]

Under local government code section 118.131, what the sheriffs and constables "are authorized to charge" is a reasonable fee that may be set by the commissioners court and that may not be "higher than is necessary to pay the expenses of providing the service."[26] In other words, if the commissioners court has set a fee for a sheriff's or constable's service of citation by certified mail, then that is the fee that the district clerk must collect when providing that service. The amount of the fee that a district clerk must charge is therefore based on the costs to a sheriff or constable in providing the service and not the cost to the district clerk. That is, this fee may be more than the cost a district clerk incurs in providing the service, but it may not be higher than is actually necessary to cover the costs of the sheriff or constables in serving citation by certified or registered mail.[27]

In summary, section 118.131 allows the commissioners court to set a reasonable fee for service by certified mail by a sheriff or constable, and if the commissioners court has done so, then the district clerk must charge the same fee. But what if the commissioners court has not set a fee for providing that

---

[25]*Id.*

[26]Tex. Loc. Gov't Code Ann. § 118.131(a), (b).

[27]*Id.* § 118.131(b).

particular service? Section 118.131 addresses that scenario, providing that for services for which the commissioners court has not set a fee, the fees for the services "are those fees provided by law in effect on August 31, 1981."[28]

As with the district clerk, the county clerk is also directed to collect a fee for service of process by certified or registered mail, and this fee is also set at whatever fee the sheriffs have been authorized to charge for that service by the commissioners court.[29] Like the district court, the county clerk has no discretion to not collect a fee for providing the service.[30] Thus, to determine what fee Appellees should be charging for providing service of citation by certified or registered mail, we first look to see what fee, if any, the commissioners court has authorized sheriffs and constables to charge for providing that same service.

In our opinion in Victor's previous action, we stated that

[a]lthough Burgess contended during oral argument that the word "citation" in the commissioners court's schedule of sheriff/constable fees refers only to service by personal delivery rather than by certified mail, nothing in the schedule of fees *or in the remainder of the record* indicates that the commissioners court intended to limit the meaning of the word "citation" in that way, and the rules of civil

---

[28]*Id.* § 118.131(h).

[29]*Id.* §§ 118.052(3)(F) ("Each clerk of a county court shall collect the following fees for services rendered to any person: . . . Mail Service of Process (Sec. 118.063) . . . same as sheriff."), .063 ("The fee for 'Mail Service of Process' . . . is for the clerk's service of process by certified or registered mail. The fee is the same amount that sheriffs and constables are authorized to charge under [s]ection 118.131.").

[30]*Id.* § 118.052(3)(F) (stating that the "clerk of a county court *shall* collect" a fee to mail service of process) (emphasis added).

11

> procedure and Texas courts signal that Texas sheriffs and constables may serve citation by certified mail, not only by personal delivery. Therefore, we hold that the commissioners court's authorization of a $60 fee for service of an unspecified manner of "citation" authorizes the charging of that fee when the citation is served by certified mail.[31]

In this action, however, the Burgesses offered and the trial court admitted evidence that, according to the Burgesses, shows that the commissioners court did not intend to include service by mail in its fee schedule.

One piece of such evidence is a copy of the video taken of the commissioners court meeting on September 29, 2009, at which the fees in question were approved. The commissioners did not discuss the reasonableness of the fee for service of citation, how the fee was determined, or, importantly, whether the fee was intended to cover service by certified or registered mail. Dotson, who has since 2005 served on the committee that makes recommendations to the commissioners court about such fees, testified that he did not remember the committee discussing service by certified mail; that to his knowledge, "it was not on the fee list"; and that the committee made no findings about that manner of service.

This testimony is evidence that the commissioners court did not make any findings about the reasonableness of a fee for citation by certified mail performed by sheriffs or constables and did not consider evidence to determine what fee would be necessary to cover the expenses of providing such a service.

---

[31]*Burgess I*, 313 S.W.3d at 850–51 (citations omitted) (emphasis added).

According to Dotson's testimony, the commissioners court did not consider the factors that it was required to consider before setting such a fee.[32] But more than that, the complete absence of any evidence that this type of service was even discussed, and the affirmative evidence that in fact this type of service was not considered by the committee in making its recommendation to the commissioners court (or by the court at the meeting approving the fees), is circumstantial evidence that the commissioners court did not set a fee for service by certified mail and did not intend to do so.[33] Appellees produced no contradictory evidence suggesting either that the commissioners court considered the cost of providing service by certified mail or that they intended to authorize the fee for sheriffs and constables to charge when providing that type of service.

If the commissioners court did not set a fee for service by certified or registered mail under section 118.131, then the fee that sheriffs and constables are authorized to charge (and, therefore, the fee that the district clerk and county clerk are authorized to charge) is the fee provided by law for that service as of August 31, 1981.[34] If no such fee has been set, based on the record before us,[35]

---

[32] *See* Tex. Loc. Gov't Code Ann. § 118.131.

[33] *See Tex. First Nat'l Bank v. Ng*, 167 S.W.3d 842, 853 (Tex. App.—Houston [14th Dist.] 2005, pet. granted, judgment vacated w.r.m.) ("Intent may certainly be proven by circumstantial evidence.").

[34] *See* Tex. Loc. Gov't Code Ann. § 118.131(h).

13

Appellees have no authority to assess the amount of $60 as a fee unless that was the amount of the fee as set by law as of August 31, 1981.[36] From the limited record, it appears that not only has the commissioners court not set the fee at an amount no higher than is necessary to pay the expense of providing service of citation by certified or registered mail, the commissioners court has not set any fee at all for that service. Accordingly, we hold that the Burgesses have shown a probable right to recovery on their declaratory judgment action. We therefore hold that the trial court abused its discretion by denying the application for temporary injunction "on the basis that [the Burgesses could not] show that [Appellees] acted illegally, unreasonably, or arbitrarily in setting or assessing the service of citation by certified mail fee."

Because no findings of fact and conclusions of law were filed,[37] we must affirm the trial court's order on any legal theory supported by the record.[38] We therefore must also consider whether the Burgesses (1) pled a cause of action

---

[35]*See Davis*, 571 S.W.2d at 862 ("This court will not assume that the evidence taken at a preliminary hearing will be the same as the evidence developed at a full trial on the merits.").

[36]*See* Tex. Loc. Gov't Code Ann. § 118.131(h).

[37]The trial court did file of record a prejudgment letter to the parties stating the basis for its judgment, but we do not consider this letter to constitute findings of fact or conclusions of law. *See Cherokee Water Co. v. Gregg County Appraisal Dist.*, 801 S.W.2d 872, 878 (Tex. 1990) (stating that a prejudgment letter to the parties "was not competent evidence of the trial court's basis for judgment").

[38]*Davis*, 571 S.W.2d at 862.

and (2) demonstrated a probable, imminent, and irreparable injury during the pendency of their case.[39]   The Burgesses pled a cause of action under the declaratory judgment statute in that they are persons whose rights are affected by a statute (namely, the fee statutes at issue here), and they seek a declaration of their "rights, status, or other legal relations thereunder."[40]

As for the injury requirement, they argued—and Edith testified at the hearing—that the Denton County Bail Bond Board's policy is that if a bail bond company does not pay an outstanding judgment arising from a judgment nisi by the thirty-first day after it has been entered, the board suspends the company's license.  And by law, the Denton County Bail Bond Board is required to notify the sheriff if a bail bond surety fails to pay a final judgment of forfeiture not later than the thirty-first day after the date of the judgment.[41]   Upon receiving such notification, the sheriff is prohibited from accepting any bonds from the bail bond surety until the judgment is paid; and the board must, after notice and hearing, revoke the surety's license if the surety fails to pay the judgment.[42]  Thus, if fees of $60 are not authorized but are nonetheless included in a bill of costs, the Burgesses would have to pay the unauthorized fees or risk losing their licenses.

---

[39]*Id.*; *see also Butnaru*, 84 S.W.3d at 204.

[40]*See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 2008) (providing for declaratory relief).

[41]Tex. Occ. Code Ann. § 1704.2535(a) (West 2004).

[42]*Id.* §§ 1704.253, .2535(b).

15

At the same time, if any of the trial courts in which bond forfeiture proceedings are pending assess the fee for service by certified mail, the Burgesses may not challenge the reasonableness of the fee in that proceeding.[43] Furthermore, if the Burgesses were required to pay the fee while this case is pending below, then even if it is finally determined that the authorized fee is less than $60, the Burgesses could potentially be barred by limitations from seeking reimbursement for the unauthorized portion of the fee that they paid, depending on when this case is finally determined.[44] The Burgesses therefore met their burden to show probable and imminent injury as well as the lack of an adequate remedy at law.[45]

Appellees argue that the Burgesses have an adequate remedy because they have the option of waiving citation and therefore not being assessed the fee. The Burgesses should not be required to waive their rights to notice in order to obtain equitable relief to which they would otherwise be entitled. Appellees also

---

[43]*Burgess I*, 313 S.W.3d at 854 ("Burgess's challenge to the commissioners court's order is not an assertion that the order is void, and . . . the challenge may not be made in this collateral bond forfeiture proceeding but must instead be raised in a separate action.").

[44]*See Lubbock Cnty., Tex. v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 585 (Tex. 2002) (holding that a cause of action seeking reimbursement from a county for unauthorized charges accrues when the payment to the county is made).

[45]*See TCA Bldg. Co, v. Nw. Res. Co.*, 890 S.W.2d 175, 179 (Tex. App.—Waco 1994, no writ) (noting that damages alone do not provide an adequate remedy when the damage award may come too late to save the applicant's business).

argue that the Burgesses could ask for stays in the pending bond forfeiture cases. Requiring the Burgesses to file for a stay in each of the hundreds of pending cases is not as practical and efficient as enjoining Appellees from collecting the fee,[46] even assuming that the trial court in each case would grant the requested relief. We therefore hold that the Burgesses have demonstrated the absence of an adequate remedy at law.

Having held that the Burgesses are entitled to some form of injunctive relief, we must now determine what manner of relief will serve the purpose of an injunction to preserve the status quo. We believe that this case is similar to *Transport Co. of Texas v. Robertson Transports, Inc.*, in which the Texas Supreme Court considered the validity of a temporary injunction restraining Robertson Transports from operating or commencing to operate under an order of the Railroad Commission.[47] Robertson, which held a certificate as a specialized motor carrier, filed an application with the Commission for an amendment to its certificate, which would authorize it to transport certain chemicals.[48] Transport Co. and others objected to the amendment. After a

---

[46]*Frequent Flyer Depot*, 281 S.W.3d at 229 (stating that an adequate remedy is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief).

[47]152 Tex. 551, 555, 261 S.W.2d 549, 551–52 (1953).

[48]*Id.* at 553, 261 S.W.2d at 550.

17

hearing, the Commission ordered the amendment.[49] Transport Co. then filed suit to invalidate the order, and in its petition, it sought a temporary injunction to restrain Robertson from operating under the order.[50] The trial court granted the temporary injunction, and the court of appeals reversed.[51]

On review, Robertson argued that the Commission's order granting the certificate created the status quo, but the court held that if Robertson was correct, then "a plaintiff could never obtain temporary relief from operation under an invalid order even though his business was threatened with destruction before a trial on the merits could be had."[52] The Supreme Court determined that the status quo in that case "was the status of the controversy as it existed prior to the entry of the Commission's order."[53]

In this case, if the status quo were the clerk's ability to assess and collect an unauthorized $60 fee (assuming that the fee was not authorized), then the Burgesses could never obtain temporary relief from the operation of the invalid assessment because they would have to choose either risking the loss of their licenses by not paying the fees or paying fees not authorized by law that they

---

[49]*Id.* at 553–54, 261 S.W.2d at 551.

[50]*Id.* at 554, 261 S.W.2d at 551.

[51]*Id.*

[52]*Id.* at 558, 261 S.W.2d at 554.

[53]*Id.*

might not ever be able to recover. And because the Burgesses contested the authority of the clerks to assess and collect the $60, the clerks' assessment and collection of that amount cannot be the last *noncontested* status of the parties. We conclude therefore that allowing the clerks to continue to assess and collect from the Burgesses a fee of $60 would not be a preservation of the status quo.

But at the same time, the clerks are required by statute to assess a fee of some amount. The Burgesses contest the amount of that fee but not the fact that some fee must be assessed. Thus, if this court were to order the trial court to enjoin the clerks from including any fee for the service in a bill of costs after a final judgment of forfeiture, then we would not be preserving the status quo.

If the commissioners court has set a fee for the service, whether at $60 or some other amount, then that is the fee that the clerks must collect. If the commissioners court has not set the fee, then the fee that must be collected is the amount that was set by law as of August 31, 1981. But a determination at this stage as to what specific fee the clerks are actually authorized to charge would require us make a determination on the merits, and we are prohibited from doing so.[54] Accordingly, we believe the preservation of the status quo can be achieved by a temporary injunction that would allow the clerks to include the $60

_____

[54] *See Reach Group, L.L.C. v. Angelina Group*, 173 S.W.3d 834, 837 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("At a temporary injunction hearing, the ultimate merits of the case are not before the trial court."); *see also Davis*, 571 S.W.2d at 862 (holding that the appellate court erred in its review of a temporary injunction by giving full consideration to the merits of the underlying lawsuit).

fee for service by certified or registered mail in the bill of costs and allow the Burgesses to pay that portion of the bill of costs into the registry of the trial court in this case.

Thus, the temporary injunction should not be framed to prevent Denton County trial courts from adjudicating the bond forfeiture claims in which the Burgesses, as sureties, are parties. The trial courts may, as usual, order that costs will be paid by the sureties without determining the total amount of the specific costs to be taxed against them in the bill of costs.[55] Furthermore, the clerks should not be enjoined from preparing the bill of costs after a trial court renders judgment in a bond forfeiture case or from taxing the cost, if any, for service of citation by certified mail, whether that service was provided by a clerk or by a sheriff or constable.

The trial court should, however, require the Burgesses to pay any fee assessed for service of citation by certified or registered mail into the registry of the trial court in this case and to pay the remainder of the judgment as otherwise

---

[55]*See Madison v. Williamson*, 241 S.W.3d 145, 158 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (noting that the trial court's role is to adjudicate which party is responsible for paying the costs of court but not to determine the correctness of specific items; that the judgment should not state the amount taxed as costs, but only that costs are awarded against a certain party; and that it is the ministerial duty of the clerk to tax costs in accordance with the rules of civil procedure); *see also* Tex. Code Crim. Pro. Ann. art. 22.16 (West 2009) (setting out when the trial court may, after forfeiture, remit to the surety the amount of the bond less costs), art. 103.001 (West 2006) ("A cost is not payable by the person charged with the cost until a written bill is produced or is ready to be produced, containing the items of cost, signed by the officer who charged the cost or the officer who is entitled to receive payment for the cost.").

required. Provided that the Burgesses follow this procedure, the trial court should enjoin the clerks from issuing execution on the portion of the costs bill taxing the fee for service by certified or registered mail.[56] And because the Burgesses' payment of the $60 into the trial court's registry would satisfy their obligation to pay the portion of the court costs for service by certified or registered mail, the Burgesses would be protected from any action by the bail bond board to suspend their licenses on the basis that they had not paid that portion of a final judgment of forfeiture. The trial court should enjoin the bail bond board from taking action to suspend the Burgesses' licenses on the basis that they have not paid that portion of the costs, provided that the amount is paid into the registry of the court. We note that the Burgesses represented to the trial court that they were willing to follow just such a procedure.

An injunction of this nature will preserve the status quo and protect the rights of the parties pending final determination of the case below. If it is finally determined that the county commissioners have set a fee of $60 for the service and that this fee is no higher than necessary to pay the expenses of providing the service, then the funds in the trial court's registry will be released to the clerks,

---

[56] *See* Tex. R. Civ. P. 129 (providing that when a party fails to pay costs within ten days after demand, the clerk may make a certified copy of the bill of costs and provide it to the sheriff or constable for collection); Tex. R. Civ. P. 149 (providing that when costs have not been paid, the clerk may issue execution against the party owing the costs); *see also* Tex. Code Crim. Pro. Ann. art. 22.14 (West 2009) (providing that execution shall issue against each party for the amount adjudged against him in a final judgment of forfeiture).

putting them in the same position with respect to the fee that they would have been in had the Burgesses not filed this suit. If, on the other hand, it is determined that the allowed fee is some lower amount, then the clerks will be able to recover that amount, and the remainder will be released to the Burgesses, protecting the Burgesses from paying more than they are required under the law.

As a final note on the framing of this injunction, we acknowledge that the code of criminal procedure provides that after forfeiture of a bond but before final judgment, the trial court may (and in some instances must) remit part of the bond, less certain costs (including court costs), to the surety.[57] The trial court should fashion the injunction to address this provision in light of this opinion.

Having held that the Burgesses met all the requirements for a temporary injunction, we hold that the trial court abused its discretion by denying the Burgesses motion for a temporary injunction, and we sustain the Burgesses' sole issue.

### III. Appellees' Cross-Appeals

On cross-appeal, Appellees argue in two issues that the trial court erred by denying their pleas to the jurisdiction based on legislative immunity and based on lack of jurisdiction over the Burgesses' declaratory judgment action.

---

[57] *See* Tex. Code Crim. Pro. Ann. art. 22.16.

Appellees assert in their first issue that the commissioners court is entitled to legislative immunity with regard to its setting the fee for service by certified mail because its decision as to the fee constitutes a legislative act.[58]  But we have held that, based on the record before us, the commissioners court has not set any such fee.  The commissioners court has therefore not taken an action that constitutes a legislative act.  Appellees present no other arguments explaining why they would be entitled to legislative immunity.  Accordingly, we overrule this issue.

Appellees argue in their second issue that the trial court erred by denying their pleas to the jurisdiction because the trial court did not have jurisdiction over the Burgesses' declaratory judgment action.  They assert that a declaratory judgment action is not available to settle disputes already pending before a court but that the Burgesses seek to have the certified mail fee deemed unreasonable in bond forfeiture cases that have already been filed in other trial courts.  Thus, they argue, the reasonableness of a certified mail fee would be determined in the courts where the bond forfeiture cases were filed.

Based on our prior holding in *Burgess I*, the trial court did not err by denying the pleas to the jurisdiction on this ground.  We have already held that

---

[58]*See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004) (discussing legislative immunity); *Brown v. Lubbock Cnty. Comm'r Court*, 185 S.W.3d 499, 505 (Tex. App.—Amarillo 2005, no pet.) (holding that the members of the commissioners court had legislative immunity for their performance of legislative functions).

23

the Burgesses may not challenge a fee assessed by the commissioners court in a bond forfeiture proceeding,[59] and, therefore the bond forfeiture proceedings are not the proper venue for the Burgesses to pursue the claim that they bring in this suit.  We overrule Appellees' second issue.

## IV.  Conclusion

Having overruled Appellees' two issues, we affirm the trial court's denial of the pleas to the jurisdiction.  Having sustained the Burgesses' sole issue, we reverse the trial court's order denying their motion for temporary injunction and remand this cause to the trial court with instructions to grant their motion for temporary injunction in accordance with this opinion.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED:  January 19, 2012

---

[59] *See Burgess I*, 313 S.W.3d at 854.